IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-456-D

| | | |
|---|---|---|
| JUSTIN VAN LEUVAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CUSHMAN & WAKEFIELD U.S., INC. | ) | |
| | ) | |
| Defendant. | ) | |

On August 15, 2018, Justin Van Leuvan ("Van Leuvan" or "plaintiff") filed a complaint in Wake County Superior Court against Cushman & Wakefield U.S., Inc. ("Cushman & Wakefield" or "defendant"), alleging breach of contract, violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 et seq., and violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 et seq. [D.E. 6-1]. On September 24, 2018, Cushman & Wakefield removed the action to this court [D.E. 6]. On October 29, 2018, Cushman & Wakefield moved to dismiss Van Leuvan's UDTPA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 9] and filed a memorandum in support [D.E. 9-1]. On November 19, 2018, Van Leuvan responded in opposition [D.E. 12]. On December 3, 2018, Cushman & Wakefield replied [D.E. 14]. As explained below, the court grants Cushman & Wakefield's partial motion to dismiss.

I.

Cushman & Wakefield, organized under Missouri law and with its principal place of business in Illinois, is a national real-estate brokerage corporation that does business in North Carolina. See Compl. [D.E. 6-1] ¶ 2. In October 2013, Cushman & Wakefield hired Van Leuvan as a broker in

its Multifamily Advisory Group Office in Raleigh, North Carolina. See id. ¶ 4. In July 2016, Marc Robinson ("Robinson"), the vice chair of Cushman & Wakefield, directed Van Leuvan to meet with the owners of an apartment complex located in Greensboro, North Carolina. See id. ¶ 6. At the time, Van Leuvan and Robinson believed that the owners did not have a contract with another brokerage firm. See id. After making the apartment complex owners an offer, though, Van Leuvan realized that another firm, Brown Investments ("Brown Investments"), had a contract with the owners of the apartment complex. See id. ¶ 7. Once Van Leuvan realized that the apartment complex owners were represented by another brokerage firm, Van Leuvan informed the owners that they should convey the misunderstanding to Brown Investments, and Van Leuvan stopped communicating with them. See id.

On August 15, 2016, the broker representing Brown Investments filed a complaint with the North Carolina Real Estate Commission ("NCREC") against Van Leuvan, Harris, and Cushman & Wakefield. See id. ¶ 8. NCREC's investigation revealed several problems with Van Leuvan's provisional real estate license. See id. ¶ 9. Van Leuvan alleges that he "swiftly corrected" the issues with his license. Id. Cushman & Wakefield obtained legal representation for both Harris and Van Leuvan concerning NCREC's investigation. See id. ¶ 10. Van Leuvan did not obtain his own legal representation because he alleges that Cushman & Wakefield "represented to Van Leuvan that he did not need to obtain separate counsel" to protect his interests. Id. ¶¶ 10–11. Moreover, nobody warned Van Leuvan about possible conflicts of interest, and Cushman & Wakefield did not provide Van Leuvan with a conflict of interest waiver. See id. ¶ 11. In February 2017, NCREC's proceedings concluded. See id. ¶ 12. As part of a consent order, NCREC placed Van Leuvan's license "under probationary status" pending Van Leuvan completing courses, which he promptly did. Id. ¶ 12.

On April 28, 2017, Cushman & Wakefield renewed Van Leuvan's brokerage contract. See id. ¶ 13. Van Leuvan alleges that his renewed broker contract contained several errors. See id. ¶¶ 14–17. For example, Van Leuven alleges that his contract stated that he was an independent contractor instead of an employee. See id. ¶ 14. Nevertheless, Van Leuvan believed, after Cushman & Wakefield renewed his contract, that the NCREC matter had concluded and that his career could continue unimpeded. See id. ¶ 18.

In June 2017, NCREC informed Van Leuvan that his consent order had never gone into effect and his real estate license would be suspended for three months. See id. ¶ 19. Cushman & Wakefield then terminated Van Leuvan's employment. See id. ¶ 20. Watson Bryant, the managing director of Cushman & Wakefield's Raleigh office, told Van Leuvan that Van Leuvan would receive commissions on active listings as they closed. See id. ¶ 21. This arrangement comported with the renewed broker contract between the parties. See id. ¶ 22. Nonetheless, according to Van Leuvan, his termination letter stated that Cushman & Wakefield would compensate Van Leuvan only for deals that closed within one month of his termination. See id. ¶ 24. Moreover, Van Leuvan alleges that Cushman & Wakefield has not paid Van Leuvan any commission since his termination, provided Van Leuvan with a list of pending deals, or reimbursed Van Leuvan as required by his contract. See id. ¶¶ 25–27.

On August 15, 2018, Van Leuvan filed a complaint against Cushman & Wakefield [D.E. 6-1]. In his complaint, Van Leuvan alleges that Cushman & Wakefield breach its contract with Van Leuvan, see id. ¶¶ 28–37, violated the NCWHA, see id. ¶¶ 38–50, and violated the UDTPA, see id. ¶¶ 51–63. On October 29, 2018, Cushman & Wakefield moved to dismiss Van Leuvan's UDTPA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

3

II.

A.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

Subject-matter jurisdiction is based on diversity of citizenship, and the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005); Romfo v. Scottsdale Ins. Co., No. 5:17-CV-422-D,

2017 WL 6611511, at *2 (E.D.N.C. Dec. 27, 2017) (unpublished). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016); Twin City Fire Ins. Co., 433 F.3d at 369. If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Id. (quotation omitted).

B.

To establish a prima facie case under the UDTPA, a plaintiff must show (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused injury to plaintiffs. E.g., Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); see N.C. Gen. Stat. § 75-1.1; Kelly v. Ga.-Pac. LLC, 671 F. Supp. 2d 785, 798–99 (E.D.N.C. 2009). The parties dispute whether Van Leuvan has sufficiently alleged that Cushman & Wakefield's actions were "in or affecting commerce." Compare [D.E. 9-1] 3–6, with [D.E. 12] 3–7. Whether an act is in or affecting commerce within the meaning of the UDTPA is a question of law for the court. See White v. Thompson, 364 N.C. 47, 51–54, 691 S.E.2d 676, 679–80 (2010); Sara Lee Corp. v. Carter, 351 N.C. 27, 32, 519 S.E.2d 308, 311 (1999); J.M. Westall & Co. v. Windswept View of Asheville, Inc., 97 N.C. App. 71, 75, 387 S.E.2d 67, 69 (1990); accord Exclaim Mktg., LLC v. DirecTV, LLC, 134 F. Supp. 3d 1011, 1019 (E.D.N.C. 2015).

The UDTPA defines "commerce" to include "all business activities, however denominated." N.C. Gen. Stat. § 75-1.1(b); see Alexander v. Alexander, 792 S.E.2d 901, 904 (N.C. Ct. App. 2016). Despite the "expansive" statutory definition of commerce, the UDTPA does not apply to "all wrongs in a business setting." HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991); see Sara Lee Corp., 351 N.C. at 32, 519 S.E.2d at 311 ("Although the [UDTPA] is subject to a reasonably broad interpretation in determining its scope, some exceptions have been

5

carved out."). This narrower reading reflects that the "primary purpose of [the UDTPA] is to provide a private cause of action for consumers." Durling v. King, 146 N.C. App. 483, 488, 554 S.E.2d 1, 4 (2001) (quotation omitted); see Gray, 352 N.C. at 68, 529 S.E.2d at 681; Prince v. Wright, 141 N.C. App. 262, 268–69, 541 S.E.2d 191, 197 (2000). Thus, UDTPA claims usually arise from relationships between buyers and sellers. See Durling, 146 N.C. App. at 488, 553 S.E.2d at 4; cf., e.g., Compton v. Kirby, 157 N.C. App. 1, 20, 577 S.E.2d 905, 917 (2003) (holding that the sale of a business was in or affecting commerce). By contrast, "run-of-the-mill employment disputes" usually do not fall within the scope of the UDTPA because other statutes govern such disputes. Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001); see HAJMM Co., 328 N.C. at 593, 403 S.E.2d at 492 ("[T]he [UDTPA] does not cover employer-employee relations."); Schlieper v. Johnson, 195 N.C. App. 257, 267–68, 672 S.E.2d 548, 555 (2009); Buie v. Daniel Int'l Corp., 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–20 (1982), disc. rev. denied, 305 N.C. 759, 292 S.E.2d 574 (1982); cf. Skinner v. E.F. Hutton & Co., 314 N.C. 267, 274–75, 333 S.E.2d 236, 241–42 (1985) (holding that securities transactions are outside of the UDTPA's scope under the same rationale). For employment disputes to be actionable under the UDTPA, the conduct must independently be in or affecting commerce within the meaning of UDTPA. See Durling, 146 N.C. App. at 488–89, 554 S.E.2d at 4; Prince, 141 N.C. App. at 268, 541 S.E.2d at 196; Johnson v. First Union Corp., 128 N.C. App. 450, 458–59, 496 S.E.2d 1, 6–7 (1998). For example, a UDTPA claim can arise from conduct that occurs before or after the existence of the employment relationship between the parties. See Richardson v. PCS Phosphate Co., No. 3:16-CV-68-GCM, 2016 WL 4728109, at *5 (W.D.N.C. Sept. 9, 2016) (unpublished); Mayes v. Moore, 419 F. Supp. 2d 775, 784 (M.D.N.C. 2006); Johnson, 128 N.C. App. at 458–59, 496 S.E.2d at 6–7.

As for whether Van Leuvan has plausibly alleged that Cushing & Wakefield's actions are in

or affecting commerce within the meaning of the UDTPA, Van Leuvan's claims are part of a run-of-the-mill employment dispute. Van Leuvan's UDTPA claim arises from the prior employment relationship between Van Leuvan and Cushing & Wakefield. Even for conduct that did temporally occur after Cushman & Wakefield terminated his employment in June 2017, Van Leuvan has not plausibly alleged that such conduct was itself a "business activity" in or affecting commerce. N.C. Gen. Stat. § 75.1-1(b); see, e.g., Durling, 146 N.C. App. at 489, 554 S.E.2d at 4–5; Johnson, 128 N.C. App. at 458–59, 496 S.E.2d at 6–7. Van Leuvan's allegation that the April 28, 2017 agreement was "made within a commercial context," Compl. ¶ 62, does not render this element plausible. In short, this dispute uniquely affects Van Leuvan, not commerce generally.

The court rejects Van Leuvan's attempt to transform the conduct underlying his breach of contract claim into a UDTPA claim. A "mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA]." Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 41–42, 626 S.E.2d 315, 323 (2006); see PCS Phospate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007); Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). Plaintiffs must show "substantial aggravating circumstances attending the breach to recover under the [UDTPA]." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); see Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700; United Roasters, Inc. v. Colgate-

7

Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981). Van Leuvan has not plausibly alleged any substantial aggravating circumstances. Accordingly, the court grants Cushman & Wakefield's motion to dismiss Van Leuvan's UDTPA claim.

III.

In sum, the court GRANTS defendant's partial motion to dismiss [D.E. 9] and DISMISSES plaintiff's UDTPA claim.

SO ORDERED. This 4 day of January 2019.

JAMES C. DEVER III
United States District Judge